# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**BRENT EVERRETT RYAN**                                                                    **PLAINTIFF**

**v.**                                                         **No. 1:16CV158-MPM-JMV**

**MIKE ARLEDGE, SHERIFF**
**MARK MILEY, CHIEF DEPUTY**
**RICK JONES, CAPTAIN**
**BARRY STANFORD, LT.**
**RYAN RICKERT, CAPTAIN**
**ERIC GRANDERSON, SGT.**
**S. CUNNINGHAM, SGT.**
**MONICA TATE, OFFICER**
**D. TATE, CORPORAL**
**CANDY DAVIS**
**KAREN STANFORD**
**OFFICER CHRIS BLACK**
**LOWNDES COUNTY ADULT DETENTION CENTER**            **DEFENDANTS**

## REPORT AND RECOMMENDATION

The plaintiff, an inmate in the custody of the Mississippi Department of Corrections, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether any claims in the present case filed under 42 U.S.C. § 1983 have sufficient merit to proceed. A plaintiff's claim must be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Prison Litigation Reform Act applies to this case

because the plaintiff was incarcerated when he filed this lawsuit.[1]

## Allegations

Mr. Ryan's allegations arise from two scenarios: his arrest and his subsequent incarceration. The court will summarize these allegations separately below.

### Arrest

Mr. Ryan claims that the defendants used excessive force against him during his arrest. Just before his arrest, Ryan led Lowndes County law enforcement officers on a high-speed vehicle chase (described in detail in the police report attached to the instant complaint). The chase ended when Ryan careened into his yard and plowed his truck into his mobile home. He got out of his truck, hands on top of his head, and slowly approached Chief Deputy Mark Miley. Approximately 8 police cars had followed him and were parked nearby facing him with lights flashing and sirens wailing. The officers were, apparently ordering him to get on the ground, but their voices were drowned out by the sirens, and he did not understand them. Instead, he knelt, hands still on his head, when Officer Chris Black shot him, point blank, with a Taser; the darts stuck in his nipple and the side of his abdomen. Once Ryan was subdued, Officer Black ripped the darts from Ryan's body, causing pain, minor injury, and bleeding that stopped about 10 minutes later. Other law enforcement officers then tackled and attacked Ryan, "beat [him] up," injured his left foot, and left him with a black eye. Ryan believes that his foot was broken. It became bruised and swollen to the point that prison personnel later had to cut his boot to remove it from his foot. He received no medical diagnosis to that effect, and his foot has since healed. Ryan showed the officers his injured foot, but they took him to the Lowndes County Adult Detention Center ("LCADC"), rather than the hospital.

---

[1] 28 U.S.C. § 1915(g).

**Incarceration**

Ryan alleges that he experienced several problems during his stay at the Lowndes County Adult Detention Center ("LCADC") – denial of medical care, theft of his prison account funds, failure to protect him from assault by other inmates, changing his custody level without due process, unhealthy general conditions in the jail, problems with his ability to defend against the criminal charges against him, and that prison officials discussed details regarding his criminal case with local news media

Nurse Kay Watts examined him hours after his arrival at the jail; she treated him with 600mg of Ibuprofen; he received no follow-up treatment or x-ray examination. He was placed in Cell H-7 for 96 hours (4 days) without medical care, access to a phone, or access to counsel. He did not have an initial appearance within 48 hours. He finally had an initial appearance 5 days after his arrest. Afterwards, with no explanation, he was moved from his cell to a Secure Housing Unit ("SHU"), D-Pod E Day Room. When he asked for counsel, he was told, "You don't need one until you're indicted." The defendants also defamed him by releasing false information about his arrest to the local newspaper, the Commercial Dispatch, and television news channel, WCBI. The news story of Mr. Ryan's criminal case was entitled, "Battlefield of Love."

Shortly after he arrived at the LCADC, he noticed that someone other than him was using his jail debit card to make phone calls. He tried many times to correct the matter through both informal channels and roughly 25 grievances. He believed that both guards and inmates colluded to take funds from various inmates' accounts because the login was simply the inmate's last name and the last four digits of his Social Security number. Ryan brought this to the attention of various guards, administrators and jail staff, but no one would help him. He eventually spoke with a Lowndes County criminal investigator, laying out his theory, including the names of the guards and inmates participating

in the scheme.

Once Ryan started complaining about the missing funds and filing grievances for relief, some defendants retaliated against him as detailed below:

November 1, 2014: He was assaulted by other inmates for being a "whistleblower;" the inmates told him to "shut up and quit talking to cops." He had physical altercations with several inmates, after which he was placed in isolation for a time, but the other inmates were not. Staff would put inmates in lockdown, then release them back to the general population with no explanation.

March 20, 2015: For a month he was placed in protective custody for "no reason;" he believes that the jail has an unwritten custom of placing any inmate who files a grievance into protective custody, in which inmates are confined to their cells for 23 hours per day.

March 23, 2015: Defendant Stanford told Ryan that if he filed another grievance about the matter, he would face punishment. Defendant Officer D. Shelton also told Ryan that he was "writing too many requests" and sent him to Administrative Segregation. Ryan had, however, filed substantially the same grievance – and had been denied – many times.

April 23, 2015: For over five months, Ryan faced "hardships and persecution;" he was placed in a one-man cell with one (sometimes two) cell mates 90% of the time. He had to sleep on the floor during this time. Mentally ill inmates were housed in Ryan's unit from time to time, and they were loud and disruptive and would sometimes throw feces. Occasionally, inmates would clog their toilets and flood their cells, and Ryan would wake up in toilet water.

Finally, Ryan tried to press charges against the people he believed were taking his money. However, when a Justice Court Judge reviewed the allegations, he concluded that it was a civil matter, and Ryan needed to pay a $65 filing fee and initiate a civil suit in Justice Court. Ryan asked for a form

to proceed *in forma pauperis* in state court, but it is unclear whether he received one.

## Detention Facility Not Amenable to Suit

The plaintiff's claims against the Lowndes County Adult Detention Center should be dismissed. An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed.R.Civ.P. 17(b). In Mississippi, "sheriff's departments are not political subdivisions within the meaning of the [Mississippi Tort Claims Act]. Thus, the Sheriff's Department does not enjoy a separate legal existence, apart from [the county in which it is located]." *Brown v. Thompson,* 927 So.2d 733 (Miss. 2006). Similarly, Mississippi jails and prisons are not amenable to civil suit. *Campbell v. Thompson*, 2015 WL 5772535 (S.D. Miss.), *Simmons v. Harrison County Sheriffs Dept.*, 2015 WL 4742381 (S.D. Miss.) For these reasons, the plaintiff's claims against the Lowndes County Adult Detention Center should be dismissed.

## Taking of Property Without Due Process of Law

Mr. Ryan's claim regarding the taking of his prisoner account funds should be dismissed. The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the Paratt/Hudson doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011). Thus, the

initial question before the court as to the plaintiff's claim regarding the taking of his property is whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"), which became effective on April 1, 1993. As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m). At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85 So.3d 307 (Miss.App.,2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The circumstances in *Johnson* are legally indistinguishable from those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson v. King*, 85 So.3d

307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id*. The mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id*. The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id*. Those facts mirror the facts in the present case, except that, in this case, the plaintiff alleges that jail officials have not taken steps to prevent jail guards and other inmates from taking his funds. As such, Mr. Ryan has an adequate remedy under state law, and his claims for the taking of his property without due process of law must be dismissed. The following individual defendants are named in this suit solely as to their roles in the plaintiff's claim regarding the taking of his inmate account funds: Sheriff Mike Arledge, Captain Rick Jones, Captain Ryan Rickert, Sgt. Eric Granderson, Sgt. S. Cunningham, Officer Monica Tate, Corporal D. Tate, Candy Davis, and Karen Stanford. As such, these defendants should be dismissed with prejudice from this suit.

**Defamation - State Law Claim**

The plaintiff alleges that he suffered emotional distress and defamation of character because the defendants released information about his criminal case to local news outlets. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). The plaintiff does not have a constitutional right to be free from defamation and emotional distress; as such, his claims for relief arising out of these allegations under 42 U.S.C. § 1983 must be dismissed. *Kerr v. Lyford,* 171 F.3d 330, 339 (5th Cir.2003), *abrogated on other grounds by Castellano v. Fragozo,* 352 F.3d 939, 948–49 (5th Cir.2003) (citing *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). *Shinn*

*v. College Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir.1996) (per curiam) (there is no freestanding constitutional right to be free from emotional distress); *see also Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), 42 U.S.C. § 1997e(e) (a *pro se* prisoner plaintiff in a case filed under 42 U.S.C. § 1983 must allege more than *de minimis* physical injury to state a claim for psychological or emotional damages).

*Supervisor Liability*

It appears that Mr. Ryan has named Chief Deputy Mark Miley because he was a supervisor present at the scene of Ryan's arrest. As to defendant Miley, the plaintiff alleges in his complaint only that, after he exited his truck, he "slowly began walking towards Chf. Dpty. Mark Miley who had his gun drawn." This is the only mention of defendant Miley in the complaint. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

Though failure to train employees may rise to the level of an official government policy – giving rise to a claim under 42 U.S.C. § 1983, such claims are a rarity:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S.Ct. 1197.

*Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359–60, 179 L. Ed. 2d 417 (2011).

In this case, the plaintiff does not allege that Chief Deputy Mark Miley had any personal involvement or was causally connected to the arrest incident in any way. As such, the undersigned respectfully recommends that this action be dismissed as to defendant Mark Miley for failure to state a constitutional question.

**Due Process in the Prison Context**

Mr. Ryan also alleges that the defendants denied his right to due process when he was placed in more restrictive custody "for no reason." This allegation should be dismissed for failure to state a claim upon which relief could be granted. Under the ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), the plaintiff has not set forth a valid claim for violation of the Due Process Clause or any other constitutional protection. Though

> [s]tates may under certain circumstances create liberty interests which are protected by
> the Due Process Clause, . . . these interests will be generally limited to freedom from
> restraint which, while not exceeding the sentence in such an unexpected manner as to
> give rise to protection by the Due Process Clause of its own force . . . nonetheless
> imposes atypical and significant hardship on the inmate in relation to the ordinary
> incidents of prison life.

*Id.* 115 S. Ct. at 2300 (citations omitted). In *Sandin*, the discipline administered the prisoner was confinement in isolation. The court found that this discipline fell "within the expected parameters of the sentence imposed by a court of law," and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 2301 and 2300. Therefore, neither the Due Process Clause itself nor State law or regulations gave rise to a liberty interest providing the constitutional procedural protections afforded prisoners:

(1) Advanced written notice of the claimed violation;
(2) A written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken;
(3) The ability to call witnesses (which can be limited at the discretion of prison officials for security and other reasons);
(4) The ability to present documentary evidence.

*Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974); s*ee also Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).

In the present case, the plaintiff was moved for five months from the general jail population to administrative segregation, where he was confined to his cell 23 hours per day. Such punishment clearly falls "within the expected parameters of the sentence imposed by a court of law," *id*. at 2301, and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. As such, the plaintiff's allegations regarding violation of his right to due

process are without merit, and they will be dismissed for failure to state a claim upon which relief could be granted.

## Claims and Defendants to Be Dismissed

For the reasons set forth above, the following claims should be dismissed with prejudice: taking of property without due process, changing custody classification without due process, and the state law tort of defamation. The following defendants should also be dismissed for failure to state a valid constitutional claim against them: Sheriff Mike Arledge (in his individual capacity), Chief Deputy Mark Miley, Captain Rick Jones, Captain Ryan Rickert, Sgt. Eric Granderson, Sgt. S. Cunningham, Officer Monica Tate, Corporal D. Tate, Candy Davis, the Lowndes County Adult Detention Center, and Karen Stanford.

## Claims and Defendants Remaining

Of the named defendants in this case, only Sheriff Mike Arledge (in his official capacity), Lt. Barry Stanford, Officer Chris Black, Nurse Kay Watts, and Officer D. Shelton remain. Ryan's claims against the Sheriff Arledge are that he instituted policies of unconstitutionally harsh conditions of confinement and to move any inmate who filed a grievance to isolation. The plaintiff's claim against defendant Barry Stanford and Officer D. Shelton is that they retaliated against him for repeatedly filing grievances regarding the taking of his inmate account funds. The plaintiff's claim against Officer Chris Black is that he and others used excessive force against the plaintiff during arrest. Ryan's claim against Nurse Kay Watts is that she denied him adequate medical treatment. The claims against these defendants should go forward. The plaintiff has stated a claim regarding the following allegations, though he does not, at present, know the names of the defendants involved: (1) failure to protect against the assault of other inmates for being a

"whistleblower," (2) frustration in several ways of his ability to defend the criminal charges against him, (3) unconstitutionally harsh general conditions of confinement (crowded cells, sleeping on the floor, disruptive mentally ill inmates, flooding in cell, etc.) As such, these three claims should also proceed; the plaintiff may seek information regarding the identity of the people involved in these claims as the case moves forward.

## Handling of Objections, Acknowledgment of Receipt

The appropriate procedures for filing objections to these findings and recommendations are found in 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). Objections must be in writing and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14) days of this date. *Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.*

Respectfully submitted, this, the 16th day of February, 2017.

/s/    Jane M. Virden
UNITED STATES MAGISTRATE JUDGE